**UNITED STATES of America,**

v.

**Michel JALBERT, Defendant**

**No. CR. 02–79–B–S.**

United States District Court,
D. Maine.

Nov. 14, 2002.

Jon Haddow, Farrell, Rosenblatt & Russell, Bangor, ME, for Michel Jalbert (1), defendant.

Michael D. Love, U.S. Attorney's Office, Bangor, ME, for U.S. Attorneys.

## DETENTION HEARING FINDINGS AND ORDER

KRAVCHUK, United States Magistrate Judge.

Michel Jalbert was taken into custody by United States Border Patrol personnel on October 11, 2002, in the vicinity of the GazBar gas station in Estcourt, Maine. He appeared before this court for his initial appearance on October 15, 2002, charged with entry into the United States without inspection in violation of 8 U.S.C. § 1325(a)(1) and possession of a firearm by an illegal alien in violation of 18 U.S.C. § 922(g)(5). At this initial appearance, following the assignment of counsel, Jalbert waived preliminary examination, the Government moved for detention, and the court (Singal, J.) ordered Jalbert temporarily detained and set the matter for detention hearing before me on October 17, 2002. At the continued detention hearing before me Jalbert again appeared with counsel and waived his right to a detention hearing and consented to being detained pending trial.

On November 5, 2002, the Grand Jury indicted Michel Jalbert. The indictment, in three counts, restated the two earlier charges and added a charge of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Jalbert appeared before me for arraignment on November 13, 2002. At his arraignment Jalbert's counsel orally moved to reopen the detention hearing pursuant to the provisions of 18 U.S.C. § 3142(f). I agreed with the Government that in order to reopen the detention hearing the burden was on the movant to show "that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." Jalbert proffered that he met this burden in two respects. He offered a letter (Def.Ex. 1) that had come to his attention after the initial appearance. The letter, in the view of defendant's counsel, related to Jalbert's defense that the entry he made had been authorized by custom, practice, and official policy and considerably strengthened the merits of that defense. Since the nature and circumstance of the offense charged is one of the factors that the court must consider under 18 U.S.C. § 3142(g)(1) I found that the exhibit might have a material bearing on appropriate conditions of release.

Jalbert also proffered a second "new" fact, that being that his father was prepared to post $5,000.00 U.S. funds as

cash bail to assure Jalbert's appearance for trial. The Government argued that every new piece of discovery in a case should not justify reopening detention hearings and that the defendant could have raised the cash alternative at an earlier hearing. While I agree with the Government that the existence of a new piece of evidence in a criminal case does not itself justify reopening a detention hearing, I am satisfied that neither Jalbert nor his attorney knew at the time of the original detention hearing that his father would be able to provide a financial bond and that the availability of a cash alternative and a family member who would assume responsibility for Jalbert's appearance before this court is information that has a material bearing on the conditions of release. Jalbert's attorney's apparent inability to establish earlier contact with the father is understandable given the language and geographical barriers involved in this case. Over the Government's objection, I granted Jalbert's oral motion and allowed him to reopen the detention hearing.

At the reopened detention hearing I was confronted with the following set of circumstances. Jalbert is a lifelong resident of Pohenegamook, Quebec. For the past ten years he has been employed as a woodsman earning approximately $20,000.00 per year. Jalbert lives with the mother of his five year old daughter and she is currently pregnant with their second child. Jalbert's father, who works as a truck driver and earns approximately $40,000.00 Cdn. per year, lives three doors away from Jalbert. Jalbert's parents are divorced, but his five siblings are residents of Quebec.

Jalbert's only criminal record is a 1990 conviction for receiving stolen property and breaking and entering. Jalbert never served jail time in connection with that conviction, but was on probation, apparently successfully, for two years. Jalbert was also previously apprehended by the Border Patrol authorities in June, 2001, at which time he was advised that he was not permitted to enter this country because of his prior conviction. At that time Jalbert requested and was granted a voluntary return to Canada, (Gov't.Ex. 8), apparently acknowledging that he was removable because of his prior conviction.

Turning to the nature and circumstances of the instant offense, the Government conceded for purposes of the detention hearing that to the best of its knowledge Jalbert would be entitled to the "hunting exception" to the firearm charges. Thus even though he is charged with a felony that has a potential ten year imprisonment, the sentencing guidelines indicate that the sentencing range is 0 to 6 months, given the defendant's minimal criminal history. If Jalbert were a citizen of the United States charged with possession of a firearm by a prohibited person, the issue of conditions of release on these facts would be a nonstarter. The defendant would be released on personal recognizance. The only statutory basis for detention in this case would be pursuant to 18 U.S.C. § 3142(f)(2)(A), which concerns a serious risk of flight.

██ However, the Government believes that Jalbert poses both a danger to the community and is a risk of flight. The pretrial services officer joins in that opinion (Gov't. Ex. 9, pretrial services report). The danger to the community is described as the danger that Jalbert will continue to illegally cross the Canadian/United States border to buy gas because he believes that he has some right to do so. I have made a condition of any release that he is not to enter the United States unless specifically paroled back into this country for the purpose of attending a court hearing in connection with this proceeding. If he

crosses the United States border without authorization, his release will be revoked. I believe that the only "danger" identified by the United States can be adequately addressed by a condition of release.

The United States' argument that Jalbert is a flight risk has greater currency. If Jalbert did not return to this country to face these charges, this court would have no practical way to secure his arrest and involuntary return for trial. On the other hand, the nature and circumstances of this charge suggest that it is a "matter of principle." As a practical matter, Jalbert has certainly spent more time in jail than he would have received had he pleaded guilty to the misdemeanor charge of entry without inspection in front of me on October 17, 2002. The felony charges, of course, add a greater complexity to the case and if Jalbert were convicted, he could serve some additional time. However, this is not a case where the defendant is facing the certainty of a substantial mandatory minimum sentence upon conviction nor even a substantial likelihood of a guideline sentencing range of any significance. The only certainty is that if Jalbert does not appear for trial his father will lose $5,000.00, a considerable portion of his life savings. Furthermore, if Jalbert fails to appear, he loses the "matter of principle" as well, because his default would result in affirmation of the Government's position that his entry for the purpose of purchasing gas at the GazBar was an unauthorized entry. I believe that under these circumstances the risks of nonappearance associated with Jalbert's status as a Canadian citizen can be addressed by the posting of the cash bond and his father's willingness to accept custody of his son for the purposes of returning him to this court for scheduled appearances.

The Government argues that a "common sense" reading of 18 U.S.C. § 3142 requires me to ignore Jalbert's substantial and longstanding ties to a community identified as Pohenegamook, Quebec, Canada, extending into Estcourt, Maine, United States, in the vicinity of the GazBar gas station. The Government contends that the court lacks statutory authority to craft a bail order that allows a person to leave this court's territorial jurisdiction. The AUSA admitted that he had no case law supporting this proposition nor has my research in the brief period since yesterday's detention hearing revealed any case precisely on point.

I certainly agree with the Government that the cases where an excludable alien might be released on a cash bond that not only allowed, but required, him or her to leave the United States pending trial would be few and far between. However, I have in other cases, with less notoriety and far greater potential consequences for the defendant and the Government, allowed defendants to leave the territorial jurisdiction of the United States to return to a Canadian residence in close proximity to the border. (See e.g., United States v. Brenda Densmore, Mag. No. 01–14, Order of Release (Docket No. 4), a case alleging the unlawful importation of prescription drugs into the United States, ultimately voluntarily dismissed without prejudice by the Government). The Government's suggestion that I lack the discretionary authority to enter this type of bail order is of concern to me, but in the absence of persuasive authority on the issue, I believe that the decision regarding detention or release upon appropriate conditions, including a return to one's home in Canada, is a discretionary decision that I must make under the unique circumstances of each case. In this case I acknowledge that there is a risk that Jalbert will not return for his trial. However, I am satisfied that on these facts the risks

are best balanced by allowing his release under the conditions I have fashioned.

The Government's motion for detention is **DENIED.**

*So Ordered.*